IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:15-CV-270-KS

| | |
|---|---|
| RODERICK VONZELL ALLEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court pursuant to Fed. R. Civ. P. 12(c) on the parties' cross motions for judgment on the pleadings [DE # 20 & 21], the parties having consented to proceed pursuant to 28 U.S.C. § 636(c). Plaintiff Roderick Vonzell Allen filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of his application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). The parties have fully briefed the issues, and the pending motions are ripe for adjudication. On November 10, 2016, the court held oral argument in the matter. The court has carefully reviewed the administrative record and the motions and memoranda submitted by the parties and considered the

---

[1] Plaintiff's complaint names Carolyn W. Colvin in her official capacity as Acting Commissioner of Social Security as the defendant to this action. Nancy A. Berryhill is now the Acting Commissioner of Social Security and therefore is substituted as a defendant to this action. *See* Fed. R. Civ. P. 25(d).

arguments of counsel. For the reasons set forth below, the court grants Plaintiff's Motion for Judgment on the Pleadings, denies Defendant's Motion for Judgment on the Pleadings, and remands the matter to the Commissioner for further proceedings.

## STATEMENT OF THE CASE

Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income on September 24, 2012, with an alleged onset date of November 15, 2011 (R. 27, 190-99), which Plaintiff subsequently amended to March 1, 2013 (R. 52-53). The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 27, 96-97, 118-19, 126-27, 131-32, 135-36.) Administrative Law Judge Ronald Sweeda ("ALJ") held a video hearing on September 26, 2014; the ALJ denied benefits in a ruling issued October 29, 2014. (R. 27, 40-41.) Plaintiff's request for review by the Appeals Council was denied, making the ALJ's decision the final decision of the Commissioner. (R. 1.) Plaintiff now seeks judicial review of the final administrative decision.

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere

2

scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks and citation omitted) (alteration in original) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). "'In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner].'" *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (internal quotation marks omitted) (first and second alterations in original) (quoting *Craig*, 76 F.3d at 589). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler,* 715 F.2d 148, 150 (4th Cir. 1983).

## II. Disability Determination

In making a disability determination, the Commissioner uses a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national

economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.*

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found that Plaintiff met the insured status requirements through December 31, 2015. (R. 29.) The ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. (R. 30.) Next, the ALJ determined Plaintiff had the following severe impairments: "degenerative disc disease, hepatitis C, depression, history of frostbite and history of substance abuse." (*Id.*) The ALJ identified knee pain, facial cysts, and hypothyroidism as non-severe impairments. (*Id.*) At step three, the ALJ concluded that Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had "the residual functional capacity to perform medium work . . . except no exposure to work hazards and simple routine repetitive tasks." (R. 32.) In making this assessment, the ALJ found Plaintiff's statements about the severity of his symptoms not "fully credible" and listed several

4

reasons for discounting Plaintiff's credibility. (R. 38.) At step four, the ALJ concluded Plaintiff could not perform any past relevant work. (*Id.*) At step five, the ALJ determined jobs exist in significant numbers in the national economy that Plaintiff could perform and listed laundry worker, janitor, and packer as potential occupations. (R. 39-40.)

## IV. Plaintiff's Contentions

Plaintiff challenges the Commissioner's decision to deny benefits on two grounds. First, Plaintiff contends that the ALJ incorrectly evaluated his RFC. Second, Plaintiff argues that the ALJ erred in failing to consider whether Plaintiff met Listing 12.02 (Organic Brain Injury).

### A. RFC Assessment

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *see also* 20 C.F.R. § 416.945(a)(1). In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 416.945(a)(4). All relevant evidence should be considered, including the claimant's own description of limitations from alleged symptoms. SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. § 416.945(a)(3). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7.

5

In practice, formulating the RFC requires that an ALJ conduct a "function-by-function analysis" of a claimant's work abilities before expressing any conclusions about limits on the RFC. *Mascio v. Colvin*, 780 F.3d 632, 635-36 (4th Cir. 2015); SSR 96-8p, 1996 WL 374184, at *3. This "function-by-function analysis" requires an ALJ to discuss a Plaintiff's ability to perform work-related actions listed in 20 C.F.R. § 416.945(b)-(d). *Mascio*, 780 F.3d at 636 & n.5.

An ALJ is required to show his analysis and evaluation when assessing a claimant's RFC because a reviewing court "cannot fill in the blanks for the ALJ." *See Patterson v. Comm'r of Soc. Sec. Admin.*, No. 15-2487, 2017 WL 218855, at *5 (4th Cir. Jan. 19, 2017) (reversing and remanding a disability benefits denial because the ALJ failed to document properly application of mental impairments in RFC assessment). Crucially, the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Monroe v. Calvin*, 826 F.3d 176, 189 (4th Cir. 2016) (internal quotation marks omitted). In other words, the ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Id.* (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). If necessary, an ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7.

An ALJ "is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from

6

medical sources about issues reserved to the Commissioner." SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996). As part of this consideration and explanation, an ALJ must evaluate all medical opinions in the record. 20 C.F.R §§ 404.1527(b)-(c), 416.927(b)-(c); SSR 96-8p, 1996 WL 374184, at *7. Medical opinions are "statements from physicians . . . or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

1. Mental Limitations

Plaintiff contends that the RFC assessed by the ALJ was flawed because it failed to account for a limitation regarding concentration, persistence, or pace. (Pl.'s Mem. Supp. Mot. J. Pldgs. [DE #20-2] at 7-8.) The court agrees.

During the step-three analysis, the ALJ found that Plaintiff had moderate limitations "with regard to concentration, persistence, or pace." (R. 31.) As the ALJ correctly noted, this limitation was used to rate the severity of mental impairments at step-three, and "the mental residual functional capacity assessment used at steps 4 and 5 . . . requires a more detailed assessment." (R. 32.) However, that more detailed assessment does not appear in the ALJ's opinion. During the RFC assessment, the ALJ's discussion of mental impairments is limited to his assignment of "little weight" to a psychological evaluation and the statement that "[p]sychologically, the undersigned limits the claimant to simple tasks secondary to depression." (R. 37-38.)

In *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), the Fourth Circuit held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting [an individual] to simple, routine tasks or unskilled work." *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). As the Defendant correctly notes, the Fourth Circuit left open the possibility that a moderate limitation regarding concentration, persistence, or pace might not require a limitation in a claimant's RFC. (Def.'s Mem. Supp. Mot. J. Pldgs. [DE #22] at 9.) Such an omission, though, requires an explanation. *Mascio*, 780 F.3d at 638 ("For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order." (citation omitted)).

Here, the ALJ did not explain to what extent Plaintiff's limitations in concentration, persistence, or pace affect his ability to work. This violates the Fourth Circuit's directive in *Mascio*.[2]

The Commissioner tries to explain, based on other statements in the ALJ's opinion, what the ALJ "appears to have concluded" regarding the concentration,

---

[2] *Mascio* was decided after the ALJ's opinion in this matter; thus, the ALJ lacked the benefit of *Mascio*'s guidance. Even so, the ALJ's reasoning for limiting Plaintiff to "simple tasks secondary to depression" is so sparse as to preclude meaningful review. As the connection between depression and simple tasks is not obvious, more explanation is necessary.

8

persistence, or pace limitation. (Def.'s Mem. Supp. Mot. J. Pldgs. at 9.) For example, the Commissioner suggests that the ALJ's finding of a moderate limitation in concentration, persistence, or pace and the RFC limitation to simple tasks "reflects nothing more than the ALJ's effort to give Plaintiff 'the benefit of the doubt.'" (Def.'s Mem. Supp. Mot. J. Pldgs. at 9.) This is a post-hoc rationalization. While the Commissioner may be correct, this court's review is limited to the reasons provided by the ALJ in his decision. *See Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988). Neither this court nor the Commissioner can "fill-in the gaps for the ALJ." *Torres v. Colvin*, No. 1:14-CV-7-RLV, 2016 WL 54933, at *9 (W.D.N.C. Jan. 5, 2016). Because the ALJ failed to explain how he accounted for Plaintiff's moderate limitation with regard to concentration, persistence, or pace in the RFC, the case must be remanded.

### 2. Physical Limitations

Plaintiff also contends that the ALJ incorrectly assessed his RFC by finding that Plaintiff can perform work at the medium exertional level with certain limitations. Specifically, Plaintiff contests the ALJ's decision not to include in the RFC that Plaintiff requires a cane and can lift no more than ten pounds. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 8-9.)

#### a. *Ability to Ambulate*

The ALJ stated that "there is no mention in the treatment records that a cane was ever deemed necessary by a treating physician." (R. 36.) The ALJ said nothing further about a cane. The Commissioner argues that Plaintiff fails to point "to any

9

evidence contradicting this aspect of the ALJ's decision." (Def.'s Mem. Supp. Mot. J. Pldgs. at 10.)

However, VA treatment notes from December 2013, electronically signed by Physician Assistant ("PA") William Fenstermacher, indicate that a cane was ordered. ((R. 566) ("15. Ordered a walking cane.").) Moreover, Fenstermacher's RFC assessment from June 17, 2014, also indicates that Plaintiff "uses and/or requires a cane or assistive device to walk." (R. 951.)

Furthermore, Tyler Whiteside, who holds a doctorate in physical therapy, conducted a functional capacity evaluation of Plaintiff on August 21, 2014. (R. 953-57.) Whiteside noted that Plaintiff "required close supervision" during the balance assessment "due to instability" and Plaintiff had "one instance of loss of balance with self-recovery and required close supervision due to visible lower extremity fatigue" during the walking assessment. (R. 956.) Plaintiff used a single-point cane during the walking assessment. (*Id.*) Whiteside noted that Plaintiff "was consistent with his effort and willing to perform or attempt all tasks." (*Id.*)

"With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." SSR 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2009). Information from these "other medical sources" cannot be used to establish the existence of a medically determinable

impairment, but it should be considered in assessing the severity of an impairment or its functional effects. *Id.* ("Opinions from these medical sources . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.").

In determining the weight to be accorded "other medical sources," an ALJ should consider the following factors: (1) the length of time the source has known the individual and the frequency of their contact; (2) the consistency of the source's opinion with the other evidence; (3) the degree to which the source provides relevant evidence to support her opinion; (4) how well the source explains her opinion; (5) whether the source has an area of specialty or expertise related to the claimant's impairments; and (6) any other factors tending to support or refute the source's opinion. SSR06-03p, 2006 WL 2329939, at *4-5. Although "accepted medical sources" are considered the most qualified health care professionals, "an opinion from a medical source who is not an 'acceptable medical source'" may, in certain cases, "outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." *Id.* at *5. Therefore, it is important that the ALJ not only *consider* these factors, but also *explain* "the weight given to opinions from these 'other sources' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at *6.

The Commissioner's statements in SSR06-03p concerning the increase in the use of physician assistants and other medical sources are notably relevant when, as in the instant case, the disability claimant is a veteran who receives medical treatment through the VA and has received said treatment for a significant period of time. The record indicates that Fenstermacher has treated Plaintiff repeatedly since 2012 and is the Primary Care Management Module[3] Provider for Plaintiff. (R. 319.) Moreover, while Fenstermacher is not an "acceptable medical source" under the Social Security regulations, records maintained by the North Carolina Medical Board establish that Fenstermacher has been licensed as a PA in the State of North Carolina since February 2005 and supervised by Dr. Albert Bazaar Britton III since September 2007. *See* http://wwwapps.ncmedboard.org/Clients/NCBOM/Public/LicenseeInformation/Details.aspx?&EntityID=24735&PublicFile=0 (last visited Mar. 23, 2017).

Furthermore, the ALJ mentions the Whiteside evaluation in his decision but does not discuss what, if any, weight he assigns to it or how he reconciles Whiteside's observations and conclusions with the RFC. (R. 34.) Because Fenstermacher is Plaintiff's primary care provider, the record indicates he ordered a cane for Plaintiff, and his opinion regarding Plaintiff's need for a cane was corroborated by an independent physical therapy evaluation, there exists, at the very least, a material inconsistency in the evidence concerning Plaintiff's need for a cane. *See* SSR 96-8p,

---

[3] See VHA SUPPORT SERVICE CENTER PRIMARY CARE MANAGEMENT MODULE (PCMM), https://catalog.data.gov/dataset/vha-support-service-center-primary-care-management-module-pcmm (last visited Mar. 7, 2017) (explaining PCMM).

1996 WL 374184, at *7. Absent further explanation, the court cannot say that substantial evidence supports the ALJ's finding that Plaintiff did not need a cane to ambulate.

Moreover, the ALJ's error in this regard cannot be considered harmless. The Vocational Expert testified that there would be no jobs available at the medium exertional level if Plaintiff needed a cane. (R. 74.) The ALJ's failure to resolve any inconsistencies or ambiguities raised by Fenstermacher's and Whiteside's opinions, therefore, requires remand.

### b.  *Ability to Lift*

Plaintiff also contends that the ALJ erred in finding that Plaintiff had the RFC to lift more than ten pounds. Because this case is being remanded for further consideration of the opinions of other medical sources in accordance with SSR06-03p, there exists a substantial possibility that the Commissioner's findings as to Plaintiff's residual functional capacity may be different on remand. Accordingly, the court expresses no opinion as to this issue.

### B.  Listing 12.02 (Organic Brain Injury)

Plaintiff further assigns as error the listings considered by the ALJ. Plaintiff argues that evidence was presented demonstrating that Plaintiff suffered organic brain injury as a result of his exposure to service-related explosions in Korea. Plaintiff contends, therefore, that the ALJ should have considered whether Plaintiff met or equaled Listing 12.02 (Organic Brain Injury). Without expressing any opinion as to

this assignment, the court instructs the Commissioner to consider, on remand, whether the medical evidence of record supports a finding as to Listing 12.02.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings [DE #20] is GRANTED, Defendant's Motion for Judgment on the Pleadings [DE #21] is DENIED, and the case is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration.

This 24th day of March 2017.

*Kimberly A. Swank*
KIMBERLY A. SWANK
United States Magistrate Judge